UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15-10033 |
| | ) |
| ADRIAN BAILEY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter came before the Court for a bench trial on October 31, 2016. This Order is intended to memorialize the Court's findings of fact and conclusions of law. For the reasons set forth below, the Court finds Defendant Adrian Bailey ("Defendant") GUILTY of Count Three of the indictment.

## BACKGROUND AND TESTIMONY

On May 20, 2015, Defendant was charged in this Court by way of a three-count indictment. *See* ECF No. 1. The indictment charged Defendant with: (1) Possession of Marijuana with Intent to Distribute ("Count One"); (2) Felon in Possession of a Firearm ("Count Two"); and (3) Use, Carrying and Possession of a Firearm in Furtherance of a Drug Trafficking Crime ("Count Three"). *Id*.

On February 23, 2016, Defendant entered a "blind" plea of guilty to Counts One and Two. Minute Entry dated 2/23/2016. Subsequently, Count Three was set for a trial to be held October 31, 2016. Minute Entry dated 8/5/2016. The trial was held on that date.

At trial, Benjamin Johnston of the Peoria County Sheriff's Office, Jordan Allen, a confidential informant, and Bryan Anderson of Peoria M.E.G. testified at trial. (Minute Entry dated 10/31/016). The testimony was uncontroverted that Agent Johnston, undercover, and Allen

1

met with the Defendant on March 31, 2015, to purchase a handgun and marijuana. The Parties stipulated that the handgun sold on March 31, 2015, was a Smith & Wesson .38 caliber revolver, meeting the federal definition of a firearm in 18 U.S.C. § 921(a)(3)(A). (ECF No. 29). The Parties further stipulated the drugs received from the Defendant contained marijuana, a Schedule I controlled substance. (ECF No. 29).

Allen testified he often posted items for sale on various social media. Allen further testified Defendant contacted him in March of 2015, proposing to trade a lawnmower he had listed for sale in exchange for a gun. Allen also testified the Defendant suggested "weed" could be purchased. Allen testified, and Agent Anderson confirmed, that shortly after Defendant contacted him, Allen reached out to Agent Anderson to inform him of the discussion he had had with Defendant. Agent Anderson instructed Allen to continue the conversation with Defendant for a cash purchase of the gun. Agent Anderson also suggested Allen suggest a transaction to purchase drugs. Prior to March 31, 2015, there were multiple discussions, as well as text communications, between Allen and Defendant. The text communications showed two other guns Defendant had for sale, but did not contain the gun ultimately purchased by Agent Johnston. ECF No. 31.

As noted above, on March 31, 2015, Agent Johnston and Allen met with Defendant to purchase the gun and marijuana. Agent Johnston brought a video/audio recorder to the transaction. The recording was entered into evidence. ECF No. 31. The video shows, albeit in very "shaky" form, the transaction that occurred between these parties, and it is clear to the Court that Defendant was prepared to – as well as it was understood he would - sell both a gun and marijuana during the transaction. Defendant also handed small bags of marijuana to Allen, while keeping some on his person. Furthermore, when a search warrant was later executed at Defendant's residence, law enforcement found, *inter alia*, 77 grams of marijuana, some of which was sitting on a scale.

## DISCUSSION

18 U.S.C. § 924(c)(1)(A) provides:

> (c)(1)(A) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> (i) be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

*Id*.

Both Defendant and the Government acknowledge that § 924(c)(1)(A) can be satisfied in one of two ways. A defendant can be guilty if he (1) *uses or carries a firearm* during and in relation to any crime of violence or drug trafficking OR (2) possesses a firearm *in furtherance of* any crime of violence or drug trafficking. A reading of the indictment and the Government's argument at trial make clear the Government charged Defendant under the second method. It was also stipulated that the distribution or possession with intent to distribute marijuana is a drug trafficking crime which may be prosecuted in a court of the United States.

In *United States v. Castillo*, 406 F.3d 806 (7th Cir. 2005), the Seventh Circuit noted "the natural meaning of 'in furtherance of' is 'furthering, advancing, or helping forward.'" *Castillo*, 406 F.3d at 814 (quoting *U.S. v. Hamilton*, 332 f.3d 1144, 1149 (8th Cir. 2003)). The government must establish "a *specific* nexus between the *particular* weapon and the *particular* drug crime at

issue." *Id*. at 815 (emphasis original).  Put another way, "[t]he Government must present a viable theory as to how the gun furthered the drug possession or distribution . . . , and it must present specific, non-theoretical evidence to tie that gun and the drug crime together under that theory." *Id.* at 815.  In this case, the Government advances the theory that the drug crime would not have occurred absent the gun crime.  Defendant counters that it is simply not enough to have guns and drugs in the same transaction.

In *Castillo*, the Seventh Circuit also pointed to the Fifth Circuit's non-exclusive, multi-factor test for determining whether the "specific nexus" existed in a given case, although it noted the weight given to the enumerated factors and to other factors "will vary from case to case."  *Id*. at 815.  The enumerated factors are "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found."  *Id*. at 815 (quoting *U.S. v. Ceballos-Torres*, 218 F.3d 409, 414–15 (5th Cir. 2000)).

Defendant argues *United States v. Wilson*, 115 F.3d 1185 (4th Cir. 1997), supports his case.  In *Wilson*, a confidential informant made controlled purchases of marijuana and firearms from Wilson on four occasions between January 29, 1995, and January 31, 1995.  *Id*. at 1187.  The incident supporting the section 924(c)(1) charge against Wilson occurred on January 31, 1995.  During that occasion, the confidential informant went to Wilson's apartment with the express intent to purchase more marijuana.  *Id*.  The defendant offered to sell as much marijuana as needed by the confidential informant, and also during this time, Wilson took out an unloaded rifle from his cupboard and offered to sell it to the buyer.  *Id*.  The confidential informant elected not to purchase the drugs, but bought the rifle instead.

In reaching its decision, the Fourth Circuit discussed *Smith v. United States*, a case affirming a defendant's conviction for bartering a gun in exchange for drugs. The Supreme Court declared in *Smith* that:

> At a minimum, the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or mere coincidence. The gun at least must facilitate or have the potential of facilitating the drug trafficking offense.

*Smith v. United States*, 508 U.S. 223, 228 (1993). The Fourth Circuit stated that "[u]nlike Defendant in Smith, Wilson's sale of firearm neither facilitated nor had the potential to facilitate his drug sales." *Wilson*, 115 F.3d at 1192.

The Government suggests a different Fourth Circuit case, *United States v. Lipford*, 203 F.3d 259 (4th Cir. 2000), is more instructive. In *Lipford,* a government informant contacted Lipford by phone to make arrangements to purchase drugs. *Id*. at 263. The informant then drove to Lipford's location to complete the transaction. Id. As they were conducting the drug deal, Lipford asked the informant whether he knew anybody interested in purchasing a firearm. *Id*. The informant responded he was interested but was not in a position to buy a firearm that day. *Id*. The informant bought drugs from Lipford, leaving open the possibility of other drug and firearms deals with him in the future. *Id*.

The next day, the informant—again acting at the behest of law enforcement officials—met with Lipford, intending to purchase both drugs and the gun they had discussed the previous day. *Id*. The informant purchased drugs, and although Lipford and informant discussed the gun during the transaction, the informant did not purchase it at that time. *Id*. In the days following that transaction, the informant attempted to arrange another deal with Lipford. *Id*. He ultimately arranged to meet Lipford on May 31, 1996, to purchase both drugs and the gun. *Id*. On May 31, 1996, the informant drove to meet Lipford, from whom he purchased both drugs and the gun. *Id*.

5

at 263–64.

The Government charged Lipford under the "uses or carries a firearm" section of 924(c)(1) that was in effect at the time of his conviction. *Id*. at 265-66 ("In this case, the jury convicted Lipford on the firearm charge under 18 U.S.C. § 924(c)(1), which required that the Government prove: (1) Lipford used or carried a firearm (2) during and in relation to (3) a drug trafficking offense."). The Fourth Circuit also examined the "in relation to" language of the statute. In that regard, the Fourth Circuit explained:

> To meet the "in relation to" requirement, the Government must prove that the firearm has "some purpose or effect with respect to the drug trafficking crime[.] ... [T]he gun at least must 'facilitate or have the potential of facilitating,' the drug trafficking offense." *Smith v. United States,* 508 U.S. 223, 237, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (quoting *United States v. Stewart,* 779 F.2d 538, 540 (9th Cir.1985)). On one hand, the presence of the firearm cannot be "the result of accident or coincidence." *United States v. Mitchell,* 104 F.3d 649, 654 (4th Cir.1997) (quoting *Smith,* 508 U.S. at 238, 113 S.Ct. 2050). On the other hand, it is enough for § 924(c) (1) purposes if the firearm was present for protection or to embolden the actor. *Mitchell,* 104 F.3d at 654.

*Id*. at 266. The Fourth Circuit further explained the interrelationship between drug and gun sales but noting:

> We recognize that, in the nebulous drug trade underworld, the line between purchaser and salesman is often blurred; in other words, a purchaser must often sell himself as a good customer to convince a drug source to take the risk of selling drugs. In order to persuade a drug source into taking that risk, a drug purchaser can often "sweeten the pot," offering to purchase not only drugs, but other illegal goods as well. Where that other illegal good is a firearm, that gun's involvement in the drug transaction is not "spontaneous" or "co-incidental;" on the contrary, the firearm facilitates the drug transaction, making it possible for the drug buyer to get the drug seller to take the risks inherent in selling contraband.

Id. at 267. Ultimately, the Fourth Circuit concluded "[i]n this context, the gun transaction had at least the potential of attracting Lipford into selling drugs, and we believe that the jury could have rationally determined that the firearm had at least the potential of facilitating the drug transaction at issue." *Id*. at 268. This Court finds that the Fourth Circuit reasoning is sound as it is applies to

6

the facilitation or furtherance of drug sales based on the ability to provide guns.

The Court now applies the non-exhaustive factors in *Castillo*. The drug activity being conducted was Defendant was in the business of selling small amounts of marijuana. The firearm was clearly accessible; the gun transaction occurred at the same time as the marijuana transaction. The weapon was a handgun. The record is unclear as to whether the weapon was stolen. The status of possession was illegal, as Defendant had a prior felony conviction. The gun was not loaded, and the Court notes there was no evidence in the record of any ammunition anywhere in Defendant's residence, including when a search warrant was executed. The gun was in close proximity to the drugs. And, finally, the gun was found at the same time as the marijuana.

As to the issue of the credibility of the informant, Allen, the Court finds he was credible in some respects but not others. The Court finds his testimony about the events leading up to the transactions on March 31, 2015, is credible. This is true even though he received benefit from the Government for his cooperation and testimony, by the dismissal of state court charges of aggravated battery and criminal damage to property pending as of March 31, 2015. Also, it is clear Allen hoped that his testimony at the hearing would result in reduction or dismissal of charges now pending. His testimony that he was not expecting any consideration concerning the presently pending charges was not credible in light of contrary testimony by Agent Anderson.

As Defendant concedes, in the context of § 924(c), "in furtherance of" means "the firearm must have the effect of 'furthering, advancing, or helping forward'" a drug trafficking crime. ECF No. 26 at 2. The Court finds the sale of the firearm advanced or helped forward the sale of the marijuana. It is irrelevant that only a small quantity of marijuana was sold. In addition, in the Court's view it is not particularly material whether Allen or Defendant brought up the idea of a drug sale. As the Government argued at trial, the Defendant ran a "one–stop shop" in which

7

someone could purchase drugs and guns. Defendant's getting Allen and Johnston to his house in order to purchase the gun allowed him to make a sale of marijuana that he may not have made otherwise. The presence of Allen and Johnston certainly "help[ed] forward" the drug trafficking, and the presence of the gun was not a mere coincidence, as there had been multiple discussions about a combination sale of both a gun and drugs. Accordingly, the Court finds Defendant used the gun in furtherance of a drug trafficking crime.

## CONCLUSION

For the reasons set forth above, the Court finds defendant GUILTY of Count Three of the Indictment.

ENTERED this 3rd day of November 2016.

/s/ Michael M. Mihm\_\_\_\_\_
Michael M. Mihm
United States District Judge